**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARK YARD, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>OCR LABS GLOBAL (USA) INC.,<br><br>        Defendant. | Case No. _____<br><br>State Court Case No. 2024LA4 |

**OCR LABS GLOBAL (USA) INC.'S NOTICE OF REMOVAL**

Defendant, OCR Labs Global (USA) Inc. ("**OCR Labs**"), by and through its undersigned counsel, Baker Donelson Bearman Caldwell & Berkowitz, P.C., pursuant to 28 U.S.C. §§ 1332, 1441, 1446, 1453, and 1711, and the Local Rules of the United States District Court for the Northern District of Illinois, hereby removes this action, originally filed as Case No. 2024LA4 in the Circuit Court of Grundy County, Illinois, Civil Division ("**State Court**"), to the United States District Court for the Northern District of Illinois, Eastern Division.

By filing this notice, OCR Labs does not concede any allegation, assertion, claim, or demand for relief in the Class Action Complaint ("**Complaint**") of Plaintiff, Mark Yard ("**Plaintiff**"), or that any damages exist. OCR Labs expressly denies that it has violated the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("**BIPA**"), intends to defend this matter vigorously, and reserves all defenses and objections to the allegations, assertions, claims, demands for relief, and supposed damages set forth in the Complaint. In support thereof, OCR Labs states as follows:

**JURISDICTION & VENUE**

1. This Court has original jurisdiction over this civil action under 28 U.S.C. § 1332(a)(1). The parties to this action are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See Fernandez v. Kerry, Inc.*, No. 17 CV 8971, 2020 WL 1820521, at *3-4 (N.D. Ill. Apr. 10, 2020).

2. This Court also has original jurisdiction over this civil action under 28 U.S.C. § 1332(d)(2). This is a putative class action in which the size of the putative class exceeds 100 members; there is diversity between at least one member of the putative class of plaintiffs and one defendant; and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. This action is thus removable pursuant to the Class Action Fairness Act of 2005 ("**CAFA**"), codified in relevant part at 28 U.S.C. §§ 1332(d) and 1453(b).

3. Removal to this Court is proper because the United States District Court for the Northern District of Illinois, Eastern Division, embraces the Circuit Court of Grundy County, Illinois, Civil Division, where Plaintiff commenced this action. *See* 28 U.S.C. §§ 93(a)(1), 1441(a).

**THE STATE COURT ACTION**

4. On January 17, 2024, Plaintiff, on behalf of himself and allegedly similarly situated individuals, filed this action in State Court under the caption *Mark Yard v. OCR Labs Global (USA) Inc.*, Case No. 2024LA4 ("**State Court Action**"). *See* **Exhibit ("Ex.") A1**.

5. Plaintiff seeks relief for OCR Labs' alleged violations of BIPA. Specifically, Plaintiff alleges that OCR Labs violated Sections 15(a) and 15(b) of the statute because it purportedly "collects, stores, and uses[ consumers'] biometric data in violation of the BIPA in regards to its services for Coinmetro and its other customers in Illinois." *Id.* ¶ 8. Plaintiff brings this action as a putative class action, seeking to represent a proposed class of "[a]ll persons who,

while in the State of Illinois, uploaded their photograph(s) and an ID to any application, software, or website, and subsequently to OCR Labs, from January 17, 2019 to the present." *Id.* ¶ 43. Plaintiff further alleges that the applicable class certification factors are met. *Id.* ¶¶ 44-47.

6. Among other relief, Plaintiff seeks on behalf of himself and every class member: (1) declaratory relief; (2) statutory damages; (3) injunctive and equitable relief; (4) attorney's fees and costs; and (5) pre- and post-judgment interest. *Id.* at 15 ("**Prayer for Relief**").

7. Importantly, Plaintiff expressly states in his initial State Court Action filings that he seeks $50 *million* in damages in this lawsuit. *See* **Ex. A3**, p. 2 (stating "$50,000,000.00" as the amount claimed by Plaintiff in this lawsuit).

8. Plaintiff served OCR Labs' registered agent with a copy of the Complaint on January 19, 2024. *See* **Ex. A5**; **Ex. C**, ¶ 5.

## GROUNDS FOR REMOVAL

### Removal is Proper Under 28 U.S.C. §§ 1332(a)(1) and 1441(b)

9. This case is properly removed under 28 U.S.C. §§ 1332(a)(1) and § 1441(b) because the parties to this action are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See Fernandez*, 2020 WL 1820521, at *3-4.

### There is Complete Diversity of Citizenship

10. Plaintiff is a citizen of Illinois, *see* **Ex. A1** ¶¶ 12-13, but OCR Labs is not. Rather, OCR Labs is incorporated in Delaware with its principal place of business in California. *See id.* ¶ 13; **Ex. C** ¶ 6.

11. Because OCR Labs is a citizen of Delaware and California, and Plaintiff is a citizen of Illinois, the parties are completely diverse. *See Fernandez*, 2020 WL 1820521, at *3.

3

**The Amount in Controversy Exceeds $75,000**

12. The Complaint makes apparent that the amount in controversy for Plaintiff's individual claims against OCR Labs exceeds $75,000, as required by 28 U.S.C. § 1332(d).

13. First, Plaintiff seeks statutory damages. BIPA provides for "liquidated damages of $5,000" "for each violation" that is committed "intentionally or recklessly." 740 ILCS 14/20(2).

14. The Complaint alleges the following with respect to Plaintiff:

- OCR Labs allegedly violated Section 15(b)(1) and (2) of BIPA by purportedly failing to properly inform data subjects in writing that a biometric identifier/information is being collected or stored, the specific purpose of such collection or storage, and the length of term for which such data would be collected, stored, and used, **Ex. A1** ¶ 50; *see also id.* ¶¶ 8, 56-57;

- OCR Labs allegedly violated Section 15(b)(3) of BIPA by purportedly failing to receive a written release executed by the subject of the biometric identifier/information, *id.* ¶ 50; *see also id.* ¶¶ 8, 55

- OCR Labs allegedly violated Section 15(a) of BIPA by purportedly failing to comply with BIPA's Section 15(a) mandates to: "(i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of their biometric data (i.e., when the business relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information, *id.* ¶ 51; *see also id.* ¶¶ 8, 58; and

- OCR Labs allegedly committed the above violations intentionally or recklessly, *see id.* ¶ 8 (alleging that "[d]espite [BIPA], [OCR Labs] disregards consumers' statutorily protected privacy rights and unlawfully collects, stores, and uses, their biometric data in violation of the BIPA."); *id.* ¶ 29 ("Although [OCR Labs] is well aware of Illinois consumers' privacy rights under BIPA—the truth is that it simply failed [to comply with BIPA]"); *id.* ¶ 32 ("Ultimately, [OCR Labs'] conduct disregards Coinmetro's consumers' statutory protected privacy rights in violation of the BIPA."); *id.* Prayer for Relief (seeking an award of "statutory damages of $5,000.00 for each and every willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2)").

15. Accordingly, Plaintiff alleges that $15,000 in statutory damages are in controversy for Plaintiff based on his individual claims against OCR Labs (three purported BIPA violations multiplied by $5,000 in statutory damages for each).

4

16. Second, Plaintiff seeks attorney's fees and costs. *See id.* Prayer for Relief; *see also* 740 ILCS 14/20(3) (prevailing parties may recover "reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses" under BIPA). "Legal fees may count toward the amount in controversy when the prevailing party is entitled to recover them in as part of damages." *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998). Thus, in calculating the amount in controversy, this Court may consider the attorney's fees that Plaintiff's legal team has incurred for investigating his claims, preparing and filing the Complaint, and other pre-removal tasks. While OCR Labs cannot know precisely the fees incurred, this Court should assume that those fees are substantial and potentially in excess of the jurisdictional amount, particularly given the nature of this action.

17. Lastly, Plaintiff seeks wide-ranging injunctive relief. *See* **Ex. A1** Prayer for Relief (seeking "injunctive and other equitable relief as is necessary to protect the interests of the Class, including, among other things, an Order requiring Defendant to collect, store, and use Biometric Data in compliance with BIPA"). This Court may consider the costs of that relief when calculating the amount in controversy. *See Tropp v. Western-Southern Life Ins. Co.*, 381 F.3d 591, 595 (7th Cir. 2004) (explaining that "the cost a defendant incurs in complying with injunctive relief is a legitimate consideration in a jurisdictional inquiry"). In this instance, these costs substantially increase the amount in controversy, particularly in light of the breadth of Plaintiff's claims. For example, the class is defined in the Complaint as applying to "[a]ll persons who, within the State of Illinois, uploaded their photograph(s) and an ID to any application, software, or website, and subsequently to OCR Labs, from January 17, 2019 to present." **Ex. A1** ¶ 43. The sweeping scope of these allegations means that compliance with any injunctive relief that might hypothetically be

5

ordered (though OCR Labs vigorously denies that Plaintiff is entitled to any such relief) would easily overtake the jurisdictional amount, even if the cost per user was relatively low.

18. In short, it is apparent from the Complaint that the amount in controversy for Plaintiff's individual claims against OCR Labs exceeds $75,000. *See, e.g., Fernandez,* 2020 WL 1820521, at *3; *see also Peatry v. Bimbo Bakeries USA, Inc.*, 393 F. Supp. 3d 766, 770 (N.D. Ill. 2019) (removal was proper where "recovery, although uncertain, remains plausible based on [plaintiff's] allegations and an expansive reading of BIPA's damages provision").

**Removal is Proper Under CAFA, 28 U.S.C. §§ 1332(d) and 1543(b)**

19. As amended by CAFA, 28 U.S.C. § 1332(d) grants U.S. federal district courts original jurisdiction over "any civil action" in which: (a) the aggregate number of members in the proposed class is 100 or more; (b) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; and (c) any member of the class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d).

20. This case is also properly removed under 28 U.S.C. §§ 1332(d) and 1453(b) because all of the requirements for removal under CAFA are met.

**This is a "Class Action" Under CAFA**

21. This action is a putative class action within the meaning of CAFA, which defines "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

22. Plaintiff filed this action under 735 ILCS 5/2-801, which allows "for the maintenance of a class action" when the alleged "class is so numerous that joinder of all members is impracticable"; "[t]here are questions of fact or law common to the class, which common

6

questions predominate over any questions affecting only individual class members"; "[t]he representative parties will fairly and adequately protect the interest of the class"; and "[t]he class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(1)-(4).

23. Because these requirements are "patterned" after those of Federal Civil Rule 23, *Smith v. Ill. Cent. R.R. Co.,* 860 N.E.2d 332, 338 (Ill. 2006), it is a "similar State statute" under CAFA.

24. As such, because Plaintiff invokes procedures "authorizing an action to be brought by 1 or more representative persons as a class action," this matter qualifies as a "class action" for purposes of CAFA. 28 U.S.C. § 1332(d)(1)(B).

**The Putative Class is Comprised of at Least 100 Members**

25. Plaintiff seeks to represent a class of "[a]ll persons who, while within the State of Illinois, uploaded their photograph(s) and an ID to any application, software, or website, and subsequently to OCR Labs, from January 17, 2019 to the present." Ex. A1 ¶ 43.

26. While OCR Labs denies that it captured, collected, or possessed the biometric identifiers or biometric information of Plaintiff or the Class as alleged in the Complaint, the initial investigation conducted by the undersigned indicates at least 1,000 individuals located in Illinois may have used OCR Labs' identity verification technology as described in the Complaint between January 17, 2019 and the date the Declaration attached hereto was executed.[1] *See* **Ex. C** ¶ 4.

27. Thus, although OCR Labs does not concede that Plaintiff's proposed class is certifiable, lawful, or otherwise proper, or that there are *any* individuals falling within its scope,

---

[1] OCR Labs makes this representation with respect to CAFA removal only and does not concede the putative class size for purposes of numerosity under Rule 23 of the Federal Rules of Civil Procedure. Further, OCR Labs does not concede that it can identify each putative class member.

for purposes of CAFA removal, the putative class consists of 100 or more individuals, as required by CAFA. 28 U.S.C. § 1332(d)(5)(B).

## The Amount Placed in Controversy Exceeds $5,000,000

28. Under CAFA, the claims of the individual plaintiffs in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. §§ 1332(d)(6), (d)(11).

29. The "party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is *in controversy* between the parties. A removing defendant need not confess liability in order to show that the controversy exceeds the threshold." *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 579 (7th Cir. 2017) (citing *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)) (emphasis added).

30. Importantly, "[i]t is well settled, of course, that a removing defendant 'need not show that the plaintiff will prevail or collect more than [the jurisdictional minimum amount for diversity purposes] if he does.'" *Locklear Elec. v. My Overhead Corp.*, No. 07 CV 788, 2007 WL 4225732, at *4 (S.D. Ill. Nov. 26, 2007) (citing *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006)). Rather, the burden is to show "what the plaintiff *hopes to get out of the litigation*; if this exceeds the jurisdictional amount, then *the case proceeds in federal court* unless a rule of law will keep the award under the threshold." *Rising-Moore*, 435 F.3d at 816 (emphasis added). "The demonstration concerns *what the plaintiff is claiming* (*and thus the amount in controversy between the parties*), not whether the plaintiff is likely to win or be awarded what he seeks." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) (emphasis added).

31. The removing defendant's burden to demonstrate the amount in controversy is low and need show only that there is a "reasonable probability that the stakes exceed the minimum." *Id.* Indeed, "[a] good faith estimate is acceptable if it is plausible and adequately supported by the evidence." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011) (citation omitted). "Once the proponent of jurisdiction has set out the amount in controversy, only a '*legal certainty*' that the judgment will be less forecloses federal jurisdiction." *Brill*, 427 F.3d at 448-49 (citing *Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938)) (emphasis added). Moreover, "[w]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Roppo*, 869 F.3d at 579.

32. CAFA's legislative history makes clear that doubts regarding the maintenance of class actions in state or federal court should be resolved in favor of federal jurisdiction. *See, e.g.*, S. Rep. No. 109-14, at *43, as reprinted in 2005 WL 627977 ("[o]verall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions"); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 85-86 (2014) ("no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court").

33. Here, Plaintiff expressly states in his initial State Court Action filings that he is seeking $50 *million* in damages in this lawsuit. *See* **Ex. A3** at 2.

34. In so doing, Plaintiff sets forth "*what* [*he*] *is claiming (and thus the amount in controversy between the parties)*" in this litigation. *See Brill*, 427 F.3d at 449. As Plaintiff's own words plainly evidence what he "*hopes to get out of the litigation*"—$50 *million*—this alone

9

satisfies OCR Labs' burden of demonstrating that the amount in controversy exceeds the minimum amount required for purposes of CAFA removal. *Id.*; *Rising-Moore*, 435 F.3d at 816.

35. More than that, Plaintiff's claims asserted in the Complaint also meet the jurisdictional threshold set forth in 28 U.S.C. § 1332(d)(6) in that, if awarded, the aggregate amount of the damages and other relief sought by the putative class would exceed $5,000,000, exclusive of interest and costs.

36. Plaintiff alleges that OCR Labs committed intentional or reckless BIPA violations, each of which could incur $5,000 in statutory damages. **Ex. A1** ¶¶ 8, 29, 32, Prayer for Relief. Thus, a class of even 1,000 class members would more than satisfy the threshold requirement, as $5,000 multiplied by 1,000 violations totals $5,000,000—and Plaintiff has alleged more than one violation per putative class member. *See id.* ¶¶ 8, 55-57, Prayer for Relief.

37. Plaintiff seeks to represent a class which, based on the initial investigation conducted by the undersigned, includes at least 1,000 individuals. *See* **Ex. A1** ¶ 43; **Ex. C** ¶ 4. Although OCR Labs does not concede that there is even a single individual whose biometric identifiers and/or biometric information were collected or otherwise used by OCR Labs, or otherwise through the use of its technology by third parties, and thus does not concede there is even a single member of the putative class as defined in the Complaint, for removal purposes, the aggregated liquidated damages claims of the putative class establish the amount in controversy exceeds the jurisdictional minimum of $5,000,000. *See, e.g., Appert v. Morgan Stanley Dean Witter, Inc.*, 637 F.3d 609, 617-18 (7th Cir. 2012) ("Morgan Stanley has provided a good-faith estimate that plausibly explains how the stakes exceed $5 million. That is sufficient."); *Blomberg*, 639 F.3d at 617-18 ("Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5,000,000 . . . the case belongs in federal court unless it is *legally impossible* for

the plaintiff to recover that much.") (emphasis added); *Spivey*, 528 F.3d at 986 (noting that for removal purposes under CAFA, defendant need only show that recovery at the $5,000,000 jurisdictional threshold is not "legally impossible"); *Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 691 (S.D. Ohio 2006) ("[T]he fact that Defendant removed the case does not mean that Defendant concedes that Plaintiff has adequately alleged appropriate damages.").

38. Moreover, the Complaint also seeks "injunctive and other equitable relief as is necessary to protect the interests of the Class, including, among other things, an Order requiring [OCR Labs] to collect, store, and use Biometric Data in compliance with BIPA." **Ex. A1** Prayer for Relief; *Johnson v. Hunt,* No. 14 CV 8986, 2015 WL 3396798, at *4 (N.D. Ill. May 26, 2015) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347-48 (1977) (a district court applying the jurisdictional threshold must attempt to measure the amount in controversy "by the value of the object of the litigation")); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 542 (7th Cir. 2006) (noting that for purposes of determining the amount in controversy, equitable relief may be "what compliance with an injunction would cost the defendant").

39. In addition, Plaintiff seeks an award of "reasonable attorneys' fees." *Id.* Prayer for Relief; *Webb v. Fin. Indus. Regul. Auth., Inc.*, 889 F.3d 853, 857 (7th Cir. 2018) (legal fees are attributable to the amount in controversy if a plaintiff has a statutory right to them).

40. Together, by joining their claims in one action, Plaintiff and his purported class have placed in controversy at least $5,000,000 in damages.

41. Based on the above, the $5,000,000 amount in controversy threshold is thus satisfied for purposes of 28 U.S.C. § 1332(d)(6).

**Diversity is Undisputed**

42. The parties are minimally diverse because "any member of [the class] of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

43. As established above, Plaintiff is a citizen of Illinois and OCR Labs is a citizen of California. *See supra* ¶ 10; **Ex. A1** ¶¶ 12-13; **Ex. C** ¶ 6.

44. Thus, the minimal diversity requirements under 28 U.S.C. § 1332(d)(2)(A) are satisfied.

**None of CAFA's Exceptions Bar Removal of This Action**

45. Moreover, this case does not fall within any CAFA exception or exclusion to removal jurisdiction set forth in 28 U.S.C. § 1332(d)(3), (d)(4), (d)(9) or 28 U.S.C. § 1453(d).

46. Pursuant to 28 U.S.C. § 1332(d)(3), a district court may decline to exercise jurisdiction over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed.

47. Plaintiff cannot satisfy Section 1332(d)(3), as Plaintiff submits that all putative class members are Illinois citizens. **Ex. A1** ¶ 43. It is therefore impossible for less than two-thirds of the members of the putative class to be Illinois citizens. Further, OCR Labs is a resident of Delaware and California. *Id.* ¶ 13; **Ex. C** ¶ 6. This action was originally filed in the State of Illinois. *See generally* **Ex. A1**. Thus, this Court should not decline to exercise jurisdiction based on Section 1332(d)(3).

48. 28 U.S.C. § 1332(d)(4) precludes a district court from exercising CAFA jurisdiction over a class action in which, among other things: "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was

originally filed" *and* "at least 1 defendant is a defendant . . . who is a citizen of the State where the action was originally filed." 28 U.S.C. § 1332(d)(4)(A); *see also* 28 U.S.C. § 1332(d)(4)(B) (similarly excluding cases where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed"). This exception does not apply here because OCR Labs is not a citizen of Illinois, where this action was filed, *see generally* **Ex. A1**. Instead, it is a citizen of Delaware and California. *Id.* ¶ 13; **Ex. C** ¶ 6; *see, e.g., Roppo*, 869 F.3d at 585 ("local controversy" exception did not apply where the primary defendant was not a citizen of Illinois).

49. 28 U.S.C. §§ 1332(d)(9) and 1453(d) exempt certain securities and corporate governance cases from CAFA's broad jurisdictional grant. *See* 28 U.S.C. § 1332(d)(9) (explaining that § 1332(d)(2) does not apply to cases arising under several sections of the Securities Act of 1933, several sections of the Securities Exchange Act of 1934, and certain state corporate governance laws); *id.* § 1453(d) (same). These provisions do not apply here because Plaintiff's claims do not arise under the Securities Act of 1933 or the Securities Exchange Act of 1934, and, further, do not involve state-centric corporate governance issues. *See* **Ex. A1** ¶¶ 48-60 (asserting claims for BIPA violations).

50. Accordingly, removal is proper because none of CAFA's exceptions applies.

## ARTICLE III STANDING

51. OCR Labs bears the burden of establishing this Court has jurisdiction. *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352-53 (7th Cir. 2017) (explaining "the party seeking removal . . . bears the burden of establishing federal jurisdiction"). Article III standing is a component of the jurisdictional analysis. *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) (*per curiam*). Thus, as the party invoking federal jurisdiction, OCR Labs bears the burden

of establishing Plaintiff's Article III standing. *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 620 (7th Cir. 2020) (citing *Collier*, 889 F.3d at 896).

52. To establish plaintiff has Article III standing, a defendant must demonstrate that the plaintiff alleges an injury-in-fact that was caused by defendant and that is redressable by this Court. *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886 (7th Cir. 2017) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) ("The 'irreducible constitutional minimum of standing' consists of three elements: injury-in-fact, causation, and redressability.").

53. For an injury to qualify as an injury-in-fact, it must be "concrete and particularized" and "actual and imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 330-31 (2016); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) ("No concrete harm, no standing.").

54. Here, Plaintiff has alleged the type of "concrete" injury-in-fact that courts within the Seventh Circuit have held sufficiently confer Article III standing in BIPA cases.[2]

55. The Seventh Circuit addressed the question of Article III standing in the context of BIPA Section 15(b) claims in *Bryant v. Compass Grp. USA, Inc.* There, the Seventh Circuit held the failure to provide notice and/or obtain consent prior to the collection of biometric information or biometric identifiers both inflict a personal privacy injury sufficient to establish the Article III "injury-in-fact" prong of the standing analysis for Section 15(b) claims. 958 F.3d at 626.

56. Here, Plaintiff claims OCR Labs violated Section 15(b) by failing to obtain written releases as required by Section 15(b)(3), and by failing to notify Plaintiff and the Class in writing of the information required to be disclosed under Section 15(b)(1) and (2). *See* **Ex. A1** ¶¶ 55-57.

---

[2] As before, this discussion of injury is limited to whether Plaintiff has alleged an injury-in-fact sufficient to confer Article III standing. OCR Labs hereby contests that Plaintiff has suffered an "actual injury"—or is an "aggrieved party" under BIPA—and reserves the right to raise such an argument at a later date.

57. Thus, based on the allegations in the Complaint, Plaintiff has alleged the existence of a "concrete" injury-in-fact sufficient to confer Article III standing in this Court as it relates to Plaintiff's BIPA Section 15(b) claim against OCR Labs in this case.

58. The Seventh Circuit returned to the issue of Article III standing, this time directly addressing BIPA Section 15(a) claims, in *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146 (7th Cir. 2020). Comparing the decisions in *Bryant* and *Fox* is instructive in analyzing the injury-in-fact prong of Article III standing under Section 15(a)—and demonstrates that Article III standing exists in this action with respect to Plaintiff's Section 15(a) claim.

59. In *Bryant*, the Seventh Circuit held that the plaintiff lacked standing to pursue her Section 15(a) claim because she alleged only a claim under the provision of that section requiring development of a "written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information," but made *no* claim under the provision requiring compliance with the established retention schedule and destruction guidelines. *Bryant*, 958 F.3d at 626. Since the duty to develop and disclose the policy is "owed to the public generally, not to particular persons whose biometric information the entity collects," the court held that the plaintiff had not alleged a particularized injury sufficient for Article III standing in connection with her Section 15(a) claim. *Id.*

60. By contrast, in *Fox*, the Seventh Circuit recognized "the limits of [Bryant's] section 15(a) holding," which applies only when the plaintiff alleges solely a violation of "the section 15(a) duty to *publicly disclose* data retention and destruction protocols." *Fox*, 980 F.3d at 1154 (emphasis in original). *Fox*'s Section 15(a) claim was "much broader" because the plaintiff had alleged that the defendant violated "the full range of its section 15(a) duties by failing to develop, publicly, disclose, *and comply with* a data-retention schedule and guidelines" for the destruction

15

of biometric data. *Id.* (emphasis in original). As the Seventh Circuit explained, the unlawful retention "of a person's biometric data is [a] concrete and particularized" injury because it exceeds the plaintiff's scope of consent regarding how the data will be used. *See id.* at 1154-55. Because the plaintiff alleged broader injurious acts than had the plaintiff in *Bryant*, the *Fox* plaintiff had standing for her Section 15(a) claim. *Id.* at 1156.

61. The inquiry, then, is whether Plaintiff's allegations in the within dispute with respect to Section 15(a) are more like those in *Bryant* or more like those in *Fox*. *J.C. v. Google LLC*, No. 21 CV 1122, 2023 WL 5350776, at *3 (C.D. Ill. Aug. 21, 2023).

62. Here, Plaintiff's Section 15(a) claim undoubtedly falls on the *Fox* side of the framework. Importantly, the Complaint alleges that "BIPA [] mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of their biometric data (*i.e.*, when the business relationship ends); and (ii) *actually adhere to that retention schedule and actually delete the biometric information*. *See* 740 ILCS 14/15(a). *Unfortunately, Defendant fails to comply with these BIPA mandates too*." **Ex. A1** ¶ 51.

63. Plaintiff also alleges that "[b]y collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information [in violation of BIPA] as described herein, [OCR Labs] violated Plaintiff's and the Class's *rights to privacy in their biometric identifiers or biometric information as set forth in BIPA, 740 ILCS 14/1*, et seq." *Id.* ¶ 59 (emphasis added).

64. Taken together, these allegations demonstrate that Plaintiff's Section 15(a) claim is not based exclusively on the "failure to develop and make publicly available a written policy for retention and destruction of biometric identifiers." Instead, Plaintiff's Section 15(a) claim also

alleges unlawful retention of biometric identifiers/information on the part of OCR Labs, which constitutes a "concrete and particularized injury" and "qualifies as an invasion of a 'private domain, much like an act of trespass would be.'" *Fox*, 980 F.3d at 1155.

65. Thus, based on the allegations in the Complaint, Plaintiff has also alleged the existence of a "concrete" injury-in-fact sufficient to confer Article III standing in this Court as it relates to Plaintiff's BIPA Section 15(a) claim against OCR Labs in this case.

## PROCEDURAL COMPLIANCE

66. Finally, removal is procedurally proper because OCR Labs has satisfied all necessary requirements for removal under 28 U.S.C. § 1446.

67. First, this Notice of Removal is timely filed. Under 28 U.S.C. § 1446(b)(1). Plaintiff served OCR Labs' registered agent with a copy of the Complaint on January 19, 2024. **Ex. A5**; **Ex. C ¶ 5**. OCR Labs has subsequently filed and served this Notice of Removal within 30 days of service of the Complaint, in accordance with 28 U.S.C. § 1446(b).

68. Second, attached hereto as **Exhibit A** are true and correct copies of all process, pleadings, and orders served upon OCR Labs in the State Court Action, in accordance with 28 U.S.C. § 1446(a).

69. Finally, as required by 28 U.S.C. § 1446(d), promptly after the filing of this Notice of Removal, OCR Labs will give written notice of the removal to counsel for Plaintiff and will file a copy of this Notice of Removal with the State Court. 28 U.S.C. § 1446(d). Pursuant to the requirements of Federal Rule of Civil Procedure 5, OCR Labs will also file with this Court a certificate of service of OCR Labs' State Court Notice of Removal filing promptly after filing is completed with the State Court. Fed. R. Civ. P. 5(d)(1)(B).

70. No previous application has been made for the relief requested herein.

### RESERVATION OF RIGHTS AND DEFENSES

71. OCR Labs expressly reserves all of its rights and defenses, and none of the foregoing shall be construed as in any way conceding the truth of any of Plaintiff's allegations or waiving any of OCR Labs' defenses. *See Brill*, 427 F.3d at 448. OCR Labs also reserves its rights to amend or supplement this Notice of Removal.

### CONCLUSION

WHEREFORE, OCR Labs Global (USA) Inc. hereby removes this action from the Circuit County of Grundy County, Illinois, and respectfully requests that the action proceed in this Court as a matter properly removed and that this Court assume full jurisdiction as if it had been originally filed here.

Respectfully submitted,

**DATED**: February 20, 2024

BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, P.C.

*s/ Thomas J. Aumann*
Thomas J. Aumann (Ill. Bar No. 06282455)
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37302
Tel.: (615) 726-5643
Fax: (615) 726-0464
Email: taumann@bakerdonelson.com

David J. Oberly
(*pro hac vice forthcoming*)
901 K. Street, Suite 900
Washington, D.C. 20001
Tel.: (202) 508-3409
Fax: (202) 508-3402
Email: doberly@bakerdonelson.com

*Attorneys for Defendant,
OCR Labs Global (USA) Inc.*

**CERTIFICATE OF SERVICE**

    I, Thomas J. Aumann, hereby certify that, on February 20, 2024, I electronically filed the foregoing Notice of Removal of Defendant OCR Labs Global (USA) Inc. with the Court via the ECF System. It is available for viewing and downloading from the ECF system, and a true and correct copy was served to all counsel of record registered with the ECF system.

                                                    BAKER DONELSON BEARMAN
                                                    CALDWELL & BERKOWITZ, P.C.

                                                    *s/ Thomas J. Aumann*
                                                    Thomas J. Aumann (IL ARDC 06282455)

                                                    *Attorney for Defendant,*
                                                    *OCR Labs Global (USA) Inc.*

## EXHIBIT INDEX

| Exhibit | Description |
|---|---|
| A | State Court File |
| A1 | Complaint |
| A2 | Motion for Class Certification |
| A3 | Original Summons |
| A4 | Returned Summons |
| A5 | Affidavit of Service of Summons; Complaint; Motion for Class Certification |
| B | State Court Docket |
| C | Declaration of Terrance David Brenner |